



SEALED

Case Unsealed

7·21·11

FILED

MAY 1 3 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

July 2010 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. **'11 CR 1926 H** |
| Plaintiff, | I N D I C T M E N T |
| v. | Title 21, U.S.C., Sec. 848(a) - Operating a Continuing Criminal |
| VICTOR MANUEL FELIX-FELIX (1),<br> aka "Raul Castro Rodriguez",<br> aka "El Senor",<br> aka "063", | Enterprise; Title 18, U.S.C., Secs. 1956(h) and 1957 - Conspiracy to Launder Monetary Instruments; Title 18, U.S.C., |
| LUIS ROBERTO GARCIA-FIERRO (2),<br> aka "Arquitecto",<br> aka "069 ", | Secs. 1956(a)(1)(A)(i), (a)(1)(B)(i), (a)(2)(A), (a)(2)(B)(i), and 1957 - Laundering |
| JORGE GUILLERMO<br>       GONZALEZ-CARDENAS (3),<br> aka "Ingeniero", | of Monetary Instruments; Title 21, U.S.C., Secs. 959, 960, and 963; Conspiracy to Distribute Cocaine |
| RODRIGO COLMENARES Y<br>       SANCHEZ-SOTO (4), | Outside the United States; Title 21, U.S.C., Secs. 959, 960 |
| GABRIELA<br>       VAZQUEZ-VILLAVICENCIO (5),<br> aka "Karla",<br> aka "Gaby",<br> aka "Monina", | and 963 - Distribution of Cocaine Outside the United States; Title 21, U.S.C., Sec. 952, 960, and 963 - Conspiracy to Import Cocaine into the United States; |
| JESUS RODOLFO<br>       GUAJARDO-FARIAS (6),<br> aka "Doctor", | Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C., Sec. 982, and Title 21, |
| OSCAR DOMINGUEZ VILLA-DIAZ (7),<br>JOSE BENJAMIN VALDEZ-BERNAL (8),<br>RIGOBERTO DIAS-PANIAGUA (9),<br>EFRAIN DIAS-PANIAGUA(10),<br>LUIS HORACIO RAMIREZ<br>       DE ARELLANO-MORALES (11),<br>MARIA RAQUEL BENITEZ (12),<br>ADALBERTO URBINA-GOMEZ (13),<br>CARLOS CAMET-RIVADENEYRA (14),<br> aka "Guero",<br>ARIEL JULIAN SAVEIN (15),<br>JOSE NIEVES<br>       MONTENEGRO-FELIX (16),<br> aka "Charlie", | U.S.C., Sec. 853 - Criminal Forfeiture |

JRK:nlv-kst:San Diego
5/13/11



```
1  ALEXIS FERNANDO                  )
               VELAZCO-HERRERA (17), )
2    aka "Percho",                   )
   JUAN J. PIMENTEL (18),            )
3  MARTIN MORALES-SOTO (19),         )
   JUAN CARLOS ALZATE (20),          )
4    aka "Guero",                    )
   JEFFREY JAMES BROWN (21),         )
5  LINDA BROWN (22),                 )
     aka "Sarah",                    )
6  NORMAN GILDARDO                   )
               CUENCA-HURTADO (23),  )
7  DARREN P. COMANS (24),            )
     aka "Darren Commons",           )
8  PATRICIA LOPEZ (25),              )
     aka "Susana",                   )
9  JOSE NICEFORO                     )
               GONZALEZ-RIVERA (26), )
10   aka "Raul",                     )
   JOSE AUGUSTO                      )
11             GONZALEZ-ROMAN (27),  )
   RONALD BLOCH (28),                )
12 OSCAR LNU (29),                   )
                                     )
13                Defendants.        )
                                     )
14 _____)
```

15    The grand jury charges:

16                   **INTRODUCTORY ALLEGATIONS**

17    1.    At all times pertinent to this indictment, the United States

18  Drug Enforcement Administration was conducting an investigation of the

19  cocaine trafficking and money laundering activities of individuals

20  located in several countries including the United States, Mexico,

21  Canada, Ecuador, and Colombia.

22    2.    At all times pertinent to this indictment, a United States

23  Drug Enforcement Administration (hereafter "DEA") undercover task

24  force officer (hereafter "undercover agent") was posing as a manager

25  of a world-wide criminal organization that could transport ton

26  quantities of narcotics and move millions of dollars in bulk currency

27  on behalf of drug trafficking organizations. Among other things, the

28  undercover agent represented to members of drug trafficking

                                    2

organizations (hereafter referred to as "DTO" or "DTOs") that the agent could transport ton quantities of cocaine on their behalf from South America, Central America, and Mexico to other countries, including the United States and Canada. The undercover agent represented that the agent could assist the DTOs by picking up their drug trafficking proceeds in the form of bulk currency in the United States, Canada, and elsewhere, depositing the proceeds into a bank account located in San Diego, California, and wire transferring the proceeds (less a commission received by the undercover agent) to bank accounts specified by the DTOs or by physically delivering the currency to persons designated by the DTOs. The undercover agent represented that the agent could make the bank deposits and wire transfers in such a way as to avoid detection by law enforcement, thereby concealing the nature, location, source, ownership, and control of the currency. These activities are generally referred to at various times in the indictment as "money laundering" activities.

### MANNER AND MEANS OF THE CONSPIRACY

1. It was a part of the conspiracy that coconspirators VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "06B", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", aka "069", JORGE GUILLERMO GONZALEZ-CARDENAS, aka, "Ingeniero", RODRIGO COLMENARES Y SANCHEZ-SOTO, GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", OSCAR DOMINGUEZ VILLA-DIAZ, JOSE BENJAMIN VALDEZ-BERNAL, RIGOBERTO DIAS-PANIAGUA, EFRAIN DIAS-PANIAGUA, and LUIS HORACIO RAMIREZ DE ARELLANO-MORALES, all of whom were residents of Mexico, and MARIA RAQUEL BENITEZ, who was a resident of the United States, would solicit the undercover DEA agent's assistance in laundering drug

3

proceeds including to arrange for the pick up of United States and Canadian currency in both the United States and Canada from couriers working with the DTOs including from couriers located in Monrovia, California; New York, New York; Chicago, Illinois; Pinkerington, Ohio; Houston, Texas; Braintree, Massachusetts; Vancouver, British Columbia, Canada; and Montreal, Quebec, Canada; deposit the currency in an undercover DEA bank account held in San Diego, California; wire-transfer the currency from the San Diego account to bank accounts specified by the coconspirators in New York, Florida, and California; and transport currency from San Diego to places within and outside the United States, all for the purpose of facilitating the international transportation and distribution of cocaine from Colombia and Ecuador for ultimate importation to the United States and elsewhere.

2. It was part of the conspiracy that coconspirators JUAN J. PIMENTEL, MARTIN MORALES-SOTO, JUAN CARLOS ALZATE, aka "Guero", JEFFREY JAMES BROWN, LINDA BROWN, aka "Sarah", NORMAN GILDARDO CUENCA-HURTADO, DARREN P. COMANS, aka "Darren Commons", PATRICIA LOPEZ, aka "Susana", RONALD BLOCH, and OSCAR LNU, all of whom were residents of the United States acting on behalf of the Mexico DTOs, delivered or attempted to deliver United States and/or Canadian currency, which constituted the proceeds of narcotics distribution, to undercover DEA agents, police officers, or informants in various cities in the United States including, Monrovia, California; New York, New York; Chicago, Illinois; Pinkerington, Ohio; and Braintree, Massachusetts.

3. It was part of the conspiracy that coconspirators, ADALBERTO URBINA-GOMEZ, CARLOS CAMET-RIVADENEYRA, ARIEL JULIAN SAVEIN, aka "Guero", JOSE AUGUSTO GONZALEZ-ROMAN, and JOSE NICEFORO GONZALEZ-RIVERA aka "Raul", who were residents of Canada and acting on behalf

4

1  of the Mexico DTOs, delivered United States and Canadian currency to
2  undercover police officers in Vancouver, British Columbia, Canada; and
3  Montreal, Quebec, Canada.

4      4.  It was part of said conspiracy that ALEXIS FERNANDO VELAZCO-
5  HERRERA, aka "Fercho", a resident of Colombia, would accept delivery
6  of bulk currency on behalf of the Mexico DTOs in Bogota, Colombia.

7      5.  It was part of said conspiracy that JOSE NIEVES MONTENEGRO-
8  FELIX, aka "Charlie", received currency in San Diego, California,
9  which constituted the proceeds of narcotics distribution.

10  <u>Count 1</u>

11  **OPERATING A CONTINUING CRIMINAL ENTERPRISE**

12      1.  At various times material to this indictment:

13      a.  Defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro
14  Rodriguez", aka "El Senor", aka "063", was the organizer and leader
15  of a narcotics distribution and money laundering organization based
16  in Guadalajara, Jalisco, Mexico and in Mexico City, Mexico.

17      (1)  Defendant  LUIS  ROBERTO  GARCIA-FIERRO,  aka
18  "Arquitecto",  was  an  associate  and  personal  representative  of
19  defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez",
20  aka "El Senor", aka "063", and assisted VICTOR MANUEL FELIX-FELIX in
21  money laundering and narcotics distribution.

22      (2)  Defendant  JORGE  GUILLERMO  GONZALEZ-CARDENAS,
23  aka "Ingeniero", was an associate of defendant VICTOR MANUEL FELIX-
24  FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and
25  assisted VICTOR MANUEL FELIX-FELIX, in money laundering and narcotics
26  distribution.

27  //
28  //

5

(3) Defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, was an associate of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and assisted VICTOR MANUEL FELIX-FELIX in money laundering and narcotics distribution.

(4) Defendant OSCAR DOMINGUEZ VILLA-DIAZ was an associate of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and assisted VICTOR MANUEL FELIX-FELIX in money laundering and narcotics distribution.

(5) Defendant RIGOBERTO DIAS-PANIAGUA was an associate of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and assisted FELIX-FELIX in money laundering and narcotics distribution.

(6) Defendant EFRAIN DIAS-PANIAGUA was an associate of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and assisted FELIX-FELIX in money laundering and narcotics distribution.

(7) Defendant JOSE NIEVES MONTENEGRO-FELIX was an associate of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and assisted VICTOR MANUEL FELIX-FELIX in money laundering.

(8) Defendant LUIS HORACIO RAMIREZ DE ARELLANO-MORALES was an associate of VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and assisted VICTOR MANUEL FELIX-FELIX in money laundering and narcotics distribution.

b. JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", was the organizer and leader of a narcotics distribution and money laundering organization based in Guadalajara, Jalisco, Mexico and in Mexico City, Mexico.

(1) Defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", was an associate of JORGE GUILLERMO GONZALEZ-CARDENAS and assisted JORGE GUILLERMO GONZALEZ-CARDENAS in money laundering.

(2) Defendant JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", was an associate of JORGE GUILLERMO GONZALEZ-CARDENAS and assisted JORGE GUILLERMO GONZALEZ-CARDENAS in money laundering.

(3) Defendant OSCAR DOMINGUEZ VILLA-DIAZ was an associate of JORGE GUILLERMO GONZALEZ-CARDENAS and assisted JORGE GUILLERMO GONZALEZ-CARDENAS in money laundering and narcotics distribution.

(4) Defendant RODRIGO COLMENARES Y SANCHEZ-SOTO was an associate of JORGE GUILLERMO GONZALEZ-CARDENAS and assisted JORGE GUILLERMO GONZALEZ-CARDENAS in money laundering and narcotics distribution.

(5) Defendant RIGOBERTO DIAS-PANIAGUA was an associate of JORGE GUILLERMO GONZALEZ-CARDENAS and assisted JORGE GUILLERMO GONZALEZ-CARDENAS in money laundering and narcotics distribution.

(6) Defendant EFRAIN DIAS-PANIAGUA was an associate of JORGE GUILLERMO GONZALEZ-CARDENAS and assisted JORGE GUILLERMO GONZALEZ-CARDENAS in money laundering and narcotics distribution.

(7) Defendant LUIS HORACIO RAMIREZ DE ARELLANO-MORALES was an associate of JORGE GUILLERMO GONZALEZ-CARDENAS and assisted JORGE GUILLERMO GONZALEZ-CARDENAS in money laundering and narcotics distribution.

2. Beginning on or about a date unknown to the grand jury and continuing up to and including March 18, 2011, within the Southern District of California, and elsewhere, defendants VICTOR MANUEL FELIX-

7

FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", did knowingly and intentionally engage in a continuing criminal enterprise by violating various felony provisions of the Controlled Substance Act (Title 21, United States Code, Sections 801, et seq.), punishable under Title 21, United States Code, Sections 841(b)(1)(A) or 960(b)(1)(B), including but not limited to conspiracy to import cocaine, conspiracy to distribute cocaine outside the United States, and distribution of cocaine outside the United States, in violation of Title 21, United States Code, Sections 841(a)(1), 952, 959, 960, and 963, as alleged in Counts 45 through 51 of this Indictment (said Counts being incorporated herein by reference).

3.   The above-noted Controlled Substance Act violations were a part of a continuing series of violations of said Act, and were undertaken by defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", both of whom occupied positions of organizer, supervisor, and management, and from such continuing series of violations, defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063," and JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", obtained substantial income and resources. All in violation of Title 21, United States Code, Section 848(a).

//
//
//
//
//
//

**Count 2**

**CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS**

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. Beginning on a date unknown to the grand jury, and continuing to up to an including March 18, 2011, within the Southern District of California, and elsewhere, defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", aka "069", JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", RODRIGO COLMENARES Y SANCHEZ-SOTO, GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", OSCAR DOMINGUEZ VILLA-DIAZ, JOSE BENJAMIN VALDEZ-BERNAL, RIGOBERTO DIAS-PANIAGUA, EFRAIN DIAS-PANIAGUA, LUIS HORACIO RAMIREZ DE ARELLANO-MORALES, MARIA RAQUEL BENITEZ, ADALBERTO URBINA-GOMEZ, CARLOS CAMET-RIVADENEYRA, aka "Guero", ARIEL JULIAN SAVEIN, JOSE NIEVES MONTENEGRO-FELIX, aka "Charlie", ALEXIS FERNANDO VELAZCO-HERRERA, aka "Fercho", JUAN J. PIMENTEL, MARTIN MORALES-SOTO, JUAN CARLOS ALZATE, aka "Guero", JEFFREY JAMES BROWN, LINDA BROWN, aka "Sarah", NORMAN GILDARDO CUENCA-HURTADO, DARREN P. COMANS, aka "Darren Commons", PATRICIA LOPEZ, aka "Susana", JOSE NICEFORO GONZALEZ-RIVERA, aka "Raul", JOSE AUGUSTO GONZALEZ-ROMAN, RONALD BLOCH, and OSCAR LNU, did knowingly combine, conspire and agree with each other and with other persons known and unknown to the grand jury to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(h) and 1957, to wit:

//

//

1          a.   knowingly conduct and attempt to conduct financial
2    transactions affecting interstate and foreign commerce, which involved
3    the proceeds of specified unlawful activity, that is, narcotics
4    distribution, with the intent to promote the carrying on of specified
5    unlawful activity, that is, narcotics distribution, and that while
6    conducting and attempting to conduct such transactions knew that the
7    property involved in the financial transaction represented the
8    proceeds of some form of unlawful activity in violation of Title 18,
9    United States Code, Section 1956(a)(1)(A)(i); and

10         b.   knowingly conduct and attempt to conduct financial
11   transactions affecting interstate and foreign commerce, which
12   transactions involved the proceeds of specified unlawful activity,
13   that is, narcotics distribution, knowing that such transactions were
14   designed in whole or in part to conceal and disguise the nature,
15   location, source, ownership, and control of the proceeds of specified
16   unlawful activity, that is, narcotics distribution, and that while
17   conducting and attempting to conduct such financial transactions, knew
18   that the property involved in the financial transactions represented
19   the proceeds of some form of unlawful activity, in violation of
20   Title 18, United States Code, Section 1956(a)(1)(B)(i); and

21         c.   transport, transmit, and transfer, and attempt to
22   transport, transmit, and transfer monetary instruments and funds from
23   a place in the United States to and through a place outside the United
24   States, with the intent to promote the carrying on of specified
25   unlawful activity that is, narcotics distribution, in violation of
26   Title 18, United States Code, Section 1956(a)(2)(A); and

27   //

28   //

1          d.    transport, transmit, and transfer, and attempt to
2 transport, transmit, and transfer monetary instruments and funds
3 involving the proceeds of specified unlawful activity, that is,
4 narcotics distribution, from a place in the United States to or
5 through a place outside the United States, knowing the funds involved
6 in the transportation, transmission, and transfer represented the
7 proceeds of some form of unlawful activity and knowing that such
8 transportation, transmission, and transfer was designed in whole or in
9 part to conceal and disguise the nature, location, source, ownership,
10 and control of the proceeds of specified unlawful activity, in
11 violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);
12 and

13          e.    knowingly engage and attempt to engage in monetary
14 transactions, by, through, and to a financial institution, affecting
15 interstate and foreign commerce, in criminally derived property of a
16 value greater than $10,000, that is, currency and monetary
17 instruments, such property having derived from a specified unlawful
18 activity, that is, narcotics distribution, in violation of Title 18,
19 United States Code, Section 1957.

20                          **OVERT ACTS**

21     In furtherance of said conspiracy and to effect the objects
22 thereof, the following overt acts, among others, were committed within
23 the Southern District of California and elsewhere:

24     1.    On or about March 26, 2009, in San Diego, California,
25           defendant MARIA RAQUEL BENITEZ introduced another individual
26           to the undercover agent over the telephone to discuss the
27           laundering of narcotics proceeds using the undercover
28           agent's services.

11

2. On or about March 27, 2009, defendant JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", made a telephone call to the undercover agent in San Diego, California and said that he had an operation that involved picking up narcotics proceeds in Mexico City and transporting the narcotics proceeds to Colombia.

3. On or about April 1, 2009, in Carlsbad, California, defendant MARIA RAQUEL BENITEZ met with the undercover agent and informed the agent that she had recently traveled to Mexico City, Mexico where defendant JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", had agreed to hire her and another individual to transport $3 million from Mexico City to Colombia, but BENITEZ reported that the agreement fell through due to a dispute between BENITEZ and GUAJARDO-FARIAS.

4. On or about June 3, 2009, in Panama City, Panama, defendants GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", and JOSE BENJAMIN VALDEZ-BERNAL met with the undercover agent and said they were interested in obtaining the agent's services in picking up more than $300 million, which they said was located in New York, New York; Los Angeles, California; and Houston, Texas, and both transporting the money by aircraft to Mexico and elsewhere and laundering the money through the banking system in the United States so that it could be accessed by the DTOs in Mexico.

//
//

5. On or about November 19, 2009, defendant JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", made a telephone call to the undercover agent in San Francisco, California and asked the agent if the agent could conduct a bulk money pick up of $10 million in New York, New York and $10 million in Washington, D.C. and subsequently transport the money to Mexico City, Mexico.

6. On or about November 20, 2009, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", sent the undercover agent in San Francisco, California an instant text message, reporting that defendant JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor" was attempting to contact the agent because GUAJARDO-FARIAS was with the clients in New York and Washington, D.C.

7. On or about November 25, 2009, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", made a telephone call to the undercover agent in San Diego, California and reported that the money from Washington, D.C. had been moved to New York, that there were now $50 million in New York, and that VAZQUEZ-VILLAVICENCIO would pay the agent a 5% commission to move the money to Mexico.

8. On or about November 25, 2009, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", sent an instant text message to the undercover agent in San Diego, California and provided the agent a direct-connect number for defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, saying that defendant COLMENARES Y SANCHEZ-SOTO would be contacting the agent in New York.

9. On or about November 25, 2009, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, made a telephone call to the undercover agent in San Diego, California and said there was a "contract" for the agent to pick up $50 million and that COLMENARES Y SANCHEZ-SOTO would meet the agent in New York, New York on November 30, 2009.

10. On or about November 30, 2009, in New York, New York, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO met with the undercover agent at a hotel and said he, COLMENARES Y SANCHEZ-SOTO, and defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", wanted the agent to launder $150 million through the United States banking system and/or transport the money from New York to Mexico City.

11. On or about December 2, 2009, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO made a telephone call to the undercover agent in New York, New York and said that his clients, who were Colombians, had cancelled the operation to launder and/or transport $150 million from New York, New York to Mexico City.

12. On or about December 2, 2009, in New York, New York, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, met with the undercover agent at a hotel and said he was trying to contact drug trafficking associates, who were from the State of Michoacan, Mexico who were associated with the La Familia drug cartel and who operated drug trafficking cells in New York, New York and Chicago, Illinois, for the purpose of

//

having the agent launder the associates' narcotics proceeds from the United States to Mexico.

13. On or about January 19, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO aka "Karla", aka "Gaby", aka "Monina", sent an instant text message to the undercover agent in San Diego, California saying that she and others met with "El Senor", who was based in Guadalajara, Mexico, and that "El Senor" wanted the agent to pick up $500,000, which was owned by the "strongest one from Sinaloa", in Vancouver, Canada.

14. On or about, January 27, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO aka "Karla", aka "Gaby", aka "Monina", sent an instant text message to the undercover agent in Vancouver, Canada instructing the agent to deposit money that was to be picked up in the future in Vancouver to the account of Vanguardia Casa de Bolsa, held at the Deutsche Bank, in New York, New York (hereafter "Vanguardia account") with the beneficiary of the deposit being "Merin Comercializadora."

15. On or about January 27, 2010, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO made a telephone call to the undercover agent reporting that he would be releasing $500,000 to defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", at the same time that the agent received $500,000 in Vancouver.

16. On or about February 13, 2010, defendant JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", made a telephone call to the undercover agent in Southern California and reported that defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", was in Spain negotiating a

15

contract to transport between $360 million and $400 million from Mexico to Spain and inquired as to when the agent could be ready to transport that money.

17. On or about February 14, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", made a telephone call to the undercover agent in Southern California and reported that she had just returned from Spain and requested that the agent transport an unspecified amount of currency from Bogota, Colombia to Spain using the agent's private aircraft.

18. On or about February 15, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", sent an instant text message to the undercover agent in San Diego, California, reporting that she wanted the agent to transport $400 million, which she stated weighed approximately 30 tons, from Bogota, Colombia to Spain.

19. On or about March 29, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", sent an instant text message to the undercover agent in San Diego, California saying she needed the agent to pick up $200,000 in the Los Angeles, California area.

20. On or about March 29, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", during a telephone call with the undercover agent in San Diego, California, instructed the agent to wire transfer the $200,000 that the agent was to pick up in Los Angeles, California to the Vanguardia account.

//

21. On or about March 29, 2010, defendant JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", made a telephone call to the undercover agent in San Diego, California and told the agent that "Susana" was ready to deliver the money in Los Angeles, California.

22. On or about March 29, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", sent instant text messages to the undercover agent in San Diego, California instructing the agent to call "Susana" at a specified telephone number and informing the agent that the owner of the money was a client of hers in Guadalajara, Mexico.

23. On or about March 30, 2010, in Monrovia, California, acting on behalf of defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", defendant PATRICIA LOPEZ, aka "Susana", delivered approximately $109,000 in United States currency to an undercover agent.

24. On or about March 31, 2010, defendants GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", RODRIGO COLMENARES Y SANCHEZ-SOTO, and JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", each made telephone calls to the undercover agent in San Diego, California and requested confirmation that the money picked up in Monrovia, California had been wire transferred from an account in San Diego, California to the Vanguardia account.

25. On or about March 31, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla",

17

aka "Gaby", aka "Monina", asked the agent to pick up $1 million in New York, New York on behalf of her client in Guadalajara, Mexico.

26. On or about March 31, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", sent an instant text message to the undercover agent in San Diego, California saying that the couriers who would be delivering the $1 million in New York, New York would call the agent and would be using the code words, "Calling on behalf of Regina."

27. On or about March 31, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", sent an instant text message to the undercover agent in San Diego, California saying that the code words had been changed from "Calling on behalf of Regina" to "King Crab."

28. On or about April 1, 2010, in New York, New York, acting on behalf of defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", an unidentified coconspirator delivered approximately $199,935 in United States currency to an undercover agent.

29. On or about April 2, 2010, in New York, New York, an unidentified coconspirator acting on behalf of defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", delivered approximately $200,220 in United States currency to an undercover agent.

30. On or about April 5, 2010, in New York, New York, defendant DARREN P. COMANS, aka "Darren Commons", acting on behalf of defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla",

18

aka "Gaby", aka "Monina", delivered approximately $360,190 in United States currency to an undercover agent.

31. On or about April 6, 2010, defendants RODRIGO COLMENARES Y SANCHEZ-SOTO and JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", made telephone calls to the undercover agent in San Diego, California and requested confirmation both that the money had been picked up in New York on April 1, 2010, April 2, 2010 and April 5, 2010, and that the money had been wire transferred to the Vanguardia account.

32. On or about April 8, 2010, during an internet telephone call, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", asked the undercover agent in San Diego, California, to pick up an unknown amount of currency in New York, New York and provided the agent with the telephone number for a courier who would be using the name of "Sarah."

33. On or about April 8, 2010, in New York, New York, acting on behalf of defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", defendants LINDA BROWN aka "Sarah", and JEFFREY JAMES BROWN delivered approximately $543,841 in United States currency to an undercover agent.

34. On or about April 13, 2010, in Bogota, Colombia defendants GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", and JOSE BENJAMIN VALDEZ-BERNAL met with the undercover agent to discuss arrangements for future currency pickups.

//
//

35. On or about April 13, 2010, during the meeting in Bogota, Colombia, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", directed the undercover agent to wire transfer the money previously delivered in New York, New York on April 8, 2010, which GABRIELA VAZQUEZ-VILLAVICENCIO said belonged to "Chapo", namely, Joaquin Guzman-Loera, aka Gilberto Osuna, aka Max Aregon, aka "El Chapo", the leader of the Sinaloa drug cartel (charged elsewhere), to the Vanguardia account.

36. On or about April 15, 2010, in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO met with the undercover agent and solicited the agent's assistance in transporting cocaine from Peru, to New York, New York on behalf of defendant JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", and JORGE GUILLERMO GONZALEZ-CARDENAS' boss in Guadalajara, Mexico namely, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063."

37. On or about April 16, 2010, in Vancouver, Canada, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant ARIEL JULIAN SAVEIN delivered approximately $811,850 in Canadian currency and $100 in United States currency to an undercover Vancouver police officer.

38. On or about May 1, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO requested that the undercover agent transport ton quantities of cocaine from Ecuador to Mexicali, Baja California, Mexico on behalf

of defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero."

39. On or about May 5, 2010, in San Jose, Costa Rica, Central America, defendants RODRIGO COLMENARES Y SANCHEZ-SOTO, JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", and OSCAR DOMINGUEZ VILLA-DIAZ met with the undercover agent and asked the agent to transport ton quantities of cocaine from Ecuador to Mexicali, Mexico with subsequent shipments to be made from Ecuador to the United States.

40. On or about May 8, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO requested that the agent quote a price for the transportation of two to three tons of cocaine from Ecuador to Los Angeles, California.

41. On or about May 18, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO requested that the agent pick up approximately $970,000 in Canadian currency in Vancouver, Canada.

42. On or about May 19, 2010, in Vancouver, Canada, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant CARLOS CAMET-RIVADENEYRA, aka "Guero", delivered approximately $968,105 in Canadian currency and $175 in United States currency to an undercover Vancouver police officer.

//

43. On or about May 21, 2010, in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO met with the undercover agent and informed the agent that he was ready to proceed with the operation to transport ton quantities of cocaine from Ecuador.

44. On or about May 27, 2010, during a telephone conversation with the undercover agent in San Diego, California defendant RODRIGO COLMENARES Y SANCHEZ-SOTO requested that the agent pick up $500,000 in Houston, Texas.

45. On or about May 31, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO requested that the agent pick up $399,000 in Vancouver, Canada, on behalf of defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero."

46. On or about June 1, 2010, in Houston, Texas, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, coconspirator Joel Pena Perez (charged elsewhere) delivered approximately $524,820 to a confidential informant.

47. On or about June 3, 2010, in Vancouver, Canada, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant CARLOS CAMET-RIVADENEYRA, aka "Guero", delivered approximately $394,900 in Canadian currency to an undercover Vancouver police officer.

48. On or about June 9, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO requested that

the agent pick up $500,000 in Canadian currency in Vancouver, Canada and an unspecified amount of currency in New York, New York.

49. On or about June 15, 2010, in Montreal, Canada, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendants JOSE NICEFORO GONZALEZ-RIVERA and JOSE AUGUSTO GONZALEZ-ROMAN delivered approximately $785,180 in Canadian currency and $178,501 in United States currency to undercover Quebec police officers.

50. On or about June 16, 2010, in New York, New York, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant JUAN CARLOS ALZATE, aka "Guero", delivered approximately $389,580 in Canadian Currency and approximately $360 in United States currency to an undercover detective.

51. On or about June 16, 2010, in Vancouver, Canada, acting on behalf of RODRIGO COLMENARES Y SANCHEZ-SOTO, defendants CARLOS CAMET-RIVADENEYRA, aka "Guero", and ADALBERTO URBINA-GOMEZ, delivered approximately $524,020 in Canadian currency to an undercover Vancouver police officer.

52. On or about August 16, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero" requested that the undercover agent pick up $300,000 in Vancouver, Canada.

//
//
//

53. On or about August 17, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO requested that the agent pick up $500,000 in New York, New York.

54. On or about August 19, 2010, in New York, New York, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant NORMAN GILDARDO CUENCA-HURTADO carried a back pack containing approximately $250,000 in United States currency to a meeting place where the money was seized by law enforcement officers.

55. On or about September 2, 2010, in Vancouver, Canada, acting on behalf of defendant JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", two unidentified coconspirators delivered approximately $175,410 in Canadian currency to an undercover Vancouver police officer.

56. On or about September 14, 2010, in Santo Domingo, Dominican Republic, defendants JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", and RIGOBERTO DIAS-PANIAGUA met with the undercover agent, and during the meeting, LUIS ROBERTO GARCIA-FIERRO agreed to pay the agent $4,000 per kilogram to transport a minimum of 2,000 kilograms of cocaine from Ecuador to Mexico City (that is, $8 million), or to pay the agent $4,500 per kilogram to transport a minimum of 2,000 kilograms of cocaine from Ecuador to Los Angeles (that is, $9 million).

57. On or about September 29, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant JORGE GUILLERMO GONZALEZ-CARDENAS,

24

aka "Ingeniero" told the agent that JORGE GUILLERMO GONZALEZ-CARDENAS would send a "trusted" person to meet with the agent in San Diego and that the "trusted" person would arrange for the delivery of $3 million to the agent as a down payment for the agent's services in transporting 2,000 kilograms of cocaine from Ecuador.

58. On or about October 1, 2010, in Del Mar, California, acting on behalf of defendant JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", defendants EFRAIN DIAS-PANIAGUA and LUIS HORACIO RAMIREZ DE ARELLANO-MORALES met with the undercover agent and agreed to arrange for delivery of a $3 million down payment to the agent for the agent's services in transporting at least 2,000 kilograms of cocaine from Ecuador to Mexico.

59. On or about October 4, 2010, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO sent an email message to the undercover agent in San Diego, California, in which RODRIGO COLMENARES Y SANCHEZ-SOTO provided the names of individuals who would be delivering the $3 million down payment to the agent.

60. On or about October 6, 2010, in Vancouver, Canada, acting on behalf of defendants JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", and RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant CARLOS CAMET-RIVADENEYRA, aka "Guero", delivered approximately $3,291,970 in Canadian currency and $8,060 in United States currency to an undercover Vancouver police officer.

//
//

61. On or about November 4, 2010, in Guayaquil, Ecuador, defendants JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", and LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", met with the undercover agent and made arrangements to deliver two tons of cocaine to the agent.

62. On or about November 6, 2010, acting on behalf of defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", RODRIGO COLMENARES Y SANCHEZ-SOTO, OSCAR DOMINGUEZ VILLA-DIAZ, RIGOBERTO DIAS-PANIAGUA, and EFRAIN DIAS-PANIAGUA, an unindicted coconspirator drove a cargo truck containing approximately 2,513 kilograms of cocaine from a location in Ecuador to a location outside of Guayaquil, Ecuador where it was seized by Ecuadorian National Police.

63. On or about November 10, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, requested that the agent pick up $500,000 in United States currency in Columbus, Ohio.

64. On or about November 16, 2010, in Pinkerington, Ohio, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant MARTIN MORALES-SOTO delivered $429,830 in United States currency to a confidential informant.

65. On or about November 16, 2010, in a telephone conversation with the undercover agent in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO requested the

agent pick up $500,000 in currency in New York, New York the next day.

66. On or about November 17, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", requested that the agent coordinate the pick up of $1 million in Canadian currency in Vancouver, Canada and transport it to Bogota, Colombia.

67. On or about November 17, 2010, during a telephone conversation with the undercover agent in San Diego, California, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO agreed to pick up at least $1 million in Vancouver, Canada, which constituted the currency to be delivered on behalf of VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", to the agent.

68. On or about November 18, 2010, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant JUAN J. PIMENTEL drove a vehicle containing approximately $499,655 in United States currency to a location in New York, New York for delivery to an undercover police officer.

69. On or about November 23, 2010, in Vancouver, Canada, acting on behalf of defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant CARLOS CAMET-RIVADENEYRA, aka "Guero", delivered $998,910 in Canadian currency and $20 in United States currency to an undercover Vancouver police officer.

27

70. On or about December 1, 2010, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", sent an email message to the undercover agent in Tampa, Florida containing the telephone number for "Fercho", who would coordinate the delivery of $998,910, (less a "commission" charged by the undercover agent) in Bogota, Colombia.

71. On or about December 3, 2010, in Bogota, Colombia, acting on behalf of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", defendant ALEXIS FERNANDO VELAZCO-HERRERA, aka "Fercho", took delivery of $846,600 from a confidential informant.

72. On or about December 3, 2010, defendant ALEXIS FERNANDO VELAZCO-HERRERA, aka "Fercho", transported $346,600 in United States Currency and 96.95 million in Colombian pesos from Bogota, Colombia to Cali, Colombia where the money was seized by Colombian National Police.

73. On or about December 4, 2010, defendant GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", sent an instant text message to the undercover agent in San Diego, California inquiring as to whether the agent could transport 500 kilograms of cocaine to Los Angeles, California.

74. On or about January 4, 2011, defendant RODRIGO COLMENARES Y SANCHEZ-SOTO made a telephone call to the undercover agent in San Diego, California and requested the agent pick up $500,000 in Chicago, Illinois.

//

75. On or about January 6, 2011, in Chicago, Illinois, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant OSCAR LNU delivered $498,710 to an undercover officer.

76. On or about January 14, 2011, in Chicago, Illinois, acting on behalf of defendant RODRIGO COLMENARES Y SANCHEZ-SOTO, defendant OSCAR LNU delivered $289,955 to an undercover officer.

77. On or about January 17, 2011, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", sent an email to the undercover agent in San Diego, California confirming that VICTOR MANUEL FELIX-FELIX would be arranging for the delivery of approximately 2,000 kilograms of cocaine to the agent in Guayaquil, Ecuador.

78. On or about January 20, 2011, acting on behalf of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", an unindicted coconspirator delivered approximately 500 kilograms of cocaine to a confidential informant in Guayaquil, Ecuador.

79. On or about January 21, 2011, acting on behalf of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", an unindicted coconspirator delivered approximately 340 kilograms of cocaine to a confidential informant in Guayaquil, Ecuador.

80. On or about February 14, 2011, defendant JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", made a telephone call to the undercover agent in San Diego, California and said that defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro

29

Rodriguez", aka "El Senior", aka "063" wanted the agent to transport an additional 200 kilograms of cocaine to Los Angeles, California in exchange for payment of an additional $3 million to the agent upon arrival of the cocaine in Los Angeles.

81. On or about February 14, 2011, during a telephone conversation with the undercover agent in San Diego, California, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063" agreed to pay an additional down payment of $1 million to the undercover agent for the agent's services in transporting approximately 1,040 kilograms of cocaine from Ecuador to Mexico.

82. On or about February 18, 2011, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", sent an email to the undercover agent in San Diego, California containing both the phone number of the person who would deliver $1,144,000 to the agent and instructions for the agent to use the code words, "Looking for Ernie on behalf of Bert."

83. On or about February 19, 2011, in Braintree, Massachusetts, acting on behalf of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", defendant RONALD BLOCH delivered $1,143,875 in United States currency to an undercover officer.

84. On or about February 19, 2011, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", made a telephone call to the undercover agent in San Diego, California, confirmed the delivery of

approximately $1.4 million in Braintree, Massachusetts, and requested that the agent deliver approximately $144,000 of those funds to "Alex" in San Diego, California.

85. On or about February 21, 2011, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", made a telephone call to the undercover agent in San Diego, California and instructed him to deliver $134,000 to "Alex" in San Diego and transport $10,000 to Ecuador for payment of the truck driver who delivered the cocaine in Guayaquil, Ecuador on January 20 and 21, 2011.

86. On or about February 22, 2011, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", sent an email to the undercover agent in San Diego, California instructing the agent to contact "Charlie" at a San Diego, California telephone number for the purpose of the agent delivering approximately $134,000 to "Charlie."

87. On or about February 23, 2011, in La Jolla, California, defendant JOSE NIEVES MONTENEGRO-FELIX, aka "Charlie", met with an undercover agent and took delivery of approximately $133,875 from the agent.

88. On or about March 7, 2011, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", sent an email to the undercover agent in San Diego, California, reporting that he was ready to deliver an additional 770 kilograms of cocaine to the agent in Guayaquil, Ecuador.

//

89. On or about March 13, 2011, acting on behalf of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", an unindicted coconspirator delivered approximately 340 kilograms of cocaine to a confidential informant in Guayaquil, Ecuador.

90. On or March 13, 2011, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", sent an email to the undercover agent in Guayaquil, Ecuador confirming that the 340 kilograms of cocaine were delivered.

91. On or about March 17, 2011, in Guayaquil, Ecuador, acting on behalf of behalf of defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", an unindicted coconspirator drove a truck containing approximately 430 kilograms of cocaine from a warehouse near Guayaquil, Ecuador where it was seized by Ecuadorian National Police officers.

92. On or about March 17, 2011, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senior", aka "063", sent an email to the undercover agent in Guayaquil, Ecuador to confirm the delivery of 430 kilograms of cocaine in which VICTOR MANUEL FELIX-FELIX said that the "contract had been signed."

All in violation of Title 18, United States Code, Section 1956(h).

//
//
//
//
//

## Counts 3 Through 24

### LAUNDERING OF MONETARY INSTRUMENTS

1.  The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2.  On or about the dates set forth below within the Southern District of California and elsewhere, the defendants JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero" (hereafter referred to as "GONZALEZ"), RODRIGO COLMENARES Y SANCHEZ-SOTO (hereafter referred to as "COLMENARES"), GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina" (hereafter referred to as "VAZQUEZ"), and JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor" (hereafter referred to as "GUAJARDO"), did knowingly conduct and attempt to conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is, narcotics distribution, (a) with the intent to promote the carrying on of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

//
//
//

33

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|---|---|---|---|
| 3 | VAZQUEZ COLMENARES GUAJARDO | March 30, 2010 | $102,460 Wire Transfer from the Bank of America, San Diego, California to a bank account held at Deutsche Bank, New York, New York |
| 4 | VAZQUEZ COLMENARES GUAJARDO | April 1, 2010 | $185,964.55 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 5 | VAZQUEZ COLMENARES GUAJARDO | April 5, 2010 | $334,976.70 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 6 | VAZQUEZ COLMENARES GUAJARDO | April 5, 2010 | $186,204.60 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 7 | VAZQUEZ COLMENARES GUAJARDO | April 9, 2010 | $505,772.13 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 8 | COLMENARES | April 21, 2010 | $500,000 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 9 | COLMENARES | April 26, 2010 | $251,692.05 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 10 | COLMENARES | May 21, 2010 | $450,744 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 11 | COLMENARES | May 21, 2010 | $358,222.12 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|-------|-----------|------|----------------------|
| 12 | COLMENARES | June 2, 2010 | $490,864.15 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 13 | COLMENARES | June 8, 2010 | $330,428.63 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 14 | COLMENARES | June 17, 2010 | $205,000 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 15 | COLMENARES | June 22, 2010 | $244,949.31 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 16 | GONZALEZ | September 8, 2010 | $108,577.84 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 17 | COLMENARES | October 22, 2010 | $30,850 Wire Transfer from Bank of America, San Diego, California to Citibank, New York, New York |
| 18 | COLMENARES | November 19, 2010 | $402,000 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 19 | COLMENARES | December 1, 2010 | $9,041.16 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 20 | COLMENARES | December 1, 2010 | $3,830 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|-------|-----------|------|----------------------|
| 21 | GONZALEZ | December 8, 2010 | $8,466 Wire Transfer from Bank of America, San Diego, California to Banco Nacional de Mexico, Mexico City, Mexico |
| 22 | COLMENARES | January 10, 2011 | $463,800.30 Wire Transfer from Bank of America, San Diego, California to Bank of America, Miami, Florida |
| 23 | COLMENARES | January 20, 2011 | $254,955 Wire Transfer from Bank of America, San Diego, California to Bank of America, Miami, Florida |
| 24 | COLMENARES | February 1, 2011 | $9,987.10 Bank Transfer from Bank of America, San Diego, California to Bank of America, Cambria, California |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (a)(1)(B)(i), and 2.

### Counts 25 through 42

**MONETARY TRANSACTIONS GREATER THAN $10,000**

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. On or about the dates set forth below, within the Southern District of California and elsewhere, defendants GABRIELA VAZQUEZ-VILLAVICENCIO, aka, "Karla", aka "Gaby", aka "Monina", (hereafter referred to as "VAZQUEZ"), RODRIGO COLMENARES Y SANCHEZ-SOTO (hereafter referred to as "COLMENARES"), and JESUS RODOLFO GUAJARDO-FARIAS, aka, "Doctor" (hereafter referred to as "GUAJARDO"), did knowingly engage and attempt to engage, in monetary transactions, by, through and to a financial institution, affecting interstate and

36

foreign commerce, in criminally derived property of a value greater than $10,000, that is, transfer of monetary instruments, such property having been derived from a specified unlawful activity, that is, narcotics distribution:

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|-------|-----------|------|----------------------|
| 25 | VAZQUEZ COLMENARES GUAJARDO | March 30, 2010 | $102,460 Wire Transfer from the Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 26 | VAZQUEZ COLMENARES GUAJARDO | April 1, 2010 | $185,964.55 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 27 | VAZQUEZ COLMENARES GUAJARDO | April 5, 2010 | $344,976.70 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 28 | VAZQUEZ COLMENARES GUAJARDO | April 5, 2010 | $186,204.60 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 29 | VAZQUEZ COLMENARES GUAJARDO | April 9, 2010 | $505,772.13 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 30 | COLMENARES | April 21, 2010 | $500,000 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 31 | COLMENARES | April 26, 2010 | $251,692.05 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 32 | COLMENARES | May 21, 2010 | $450,744.00 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|---|---|---|---|
| 33 | COLMENARES | May 21, 2010 | $358,222.12 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 34 | COLMENARES | June 2, 2010 | $490,864.15 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 35 | COLMENARES | June 8, 2010 | $330,428.63 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 36 | COLMENARES | June 17, 2010 | $205,000 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 37 | COLMENARES | June 22, 2010 | $244,949.31 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 38 | GONZALEZ | September 8, 2010 | $108,577.84 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 39 | COLMENARES | October 22, 2010 | $30,850 Wire Transfer from Bank of America, San Diego, California to Citibank, New York, New York |
| 40 | COLMENARES | November 19, 2010 | $402,000 Wire Transfer from Bank of America, San Diego, California to Deutsche Bank, New York, New York |
| 41 | COLMENARES | January 10, 2011 | $463,800.30 Wire Transfer from Bank of America, San Diego, California to Bank of America, Miami, Florida |

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|---|---|---|---|
| 42 | COLMENARES | January 20, 2011 | $254,955 Wire Transfer from Bank of America, San Diego, California to Bank of America, Miami, Florida |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## Count 43

### TRANSPORTATION OF MONETARY INSTRUMENTS FROM THE UNITED STATES TO COLOMBIA

1.  The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2.  On or about December 3, 2010, within the Southern District of California and elsewhere, defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063" and RODRIGO COLMENARES Y SANCHEZ-SOTO did transport and transfer and attempt to transport and transfer monetary instruments, that is, $846,600 in United States Currency, from a place in the United States, that is, San Diego, California, to and through a place outside the United States, that is, Bogota, Colombia: (a) with the intent to promote the carrying on of specified unlawful activity, that is, narcotics distribution; and (b) knowing that the monetary instruments involved in the transportation and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation and transfer was designed in whole and in part to conceal and disguise the nature, location, the source, ownership, and control of the proceeds of the specified unlawful activity, that is, narcotics distribution; all in violation of Title 18, United States Code, Sections 1956(a)(2)(A), (a)(2)(B)(i), and 2.

39

## Count 44

### TRANSPORTATION OF MONETARY INSTRUMENTS
### FROM THE UNITED STATES TO ECUADOR

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. On or about March 1, 2011, within the Southern District of California and elsewhere, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", did transport and transfer and attempt to transport and transfer monetary instruments, that is, $10,000 in United States Currency, from a place in the United States, that is, San Diego, California, to and through a place outside the United States, that is, Ecuador: (a) with the intent to promote the carrying on of specified unlawful activity, that is, narcotics distribution; and (b) knowing that the monetary instruments involved in the transportation and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation and transfer was designed in whole and in part to conceal and disguise the nature, location, the source, ownership, and control of the proceeds of the specified unlawful activity, that is, narcotics distribution; all in violation of Title 18, United States Code, Sections 1956(a)(2)(A), (a)(2)(B)(i), and 2.

## Count 45

### CONSPIRACY TO DISTRIBUTE COCAINE OUTSIDE THE UNITED STATES

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. Beginning on a date unknown to the grand jury and continuing up to an including on or March 18, 2011, within the Southern District of California and elsewhere, defendants VICTOR MANUEL FELIX-FELIX,

40

aka "Raul Castro Rodriguez", aka "El Senor", aka "063", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", RODRIGO COLMENARES Y SANCHEZ-SOTO, GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", OSCAR DOMINGUEZ VILLA-DIAZ, JOSE BENJAMIN VALDEZ-BERNAL, RIGOBERTO DIAS-PANIAGUA, EFRAIN DIAS-PANIAGUA, and LUIS HORACIO RAMIREZ DE ARELLANO-MORALES did knowingly and intentionally conspire together and with each other, and with other persons known and unknown to the grand jury, to distribute 5 kilograms and more, to wit: approximately 4,123 kilograms (approximately 9,070 pounds) of cocaine, a Schedule II Controlled Substance, intending and knowing that such cocaine would be unlawfully imported into the United States; all in violation of Title 21, United States Code, Sections 959 and 960.

**OVERT ACTS**

The overt acts set forth in Count Two above are incorporated as if set forth in full herein.

All in violation of Title 21, United States Code, Section 963.

**Count 46**

**DISTRIBUTION OF COCAINE OUTSIDE THE UNITED STATES**

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. On or about November 6, 2010, in Guayaquil, Ecuador, defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", RODRIGO COLMENARES Y SANCHEZ-SOTO, OSCAR DOMINGUEZ VILLA-DIAZ, RIGOBERTO DIAS-PANIAGUA, EFRAIN DIAS-PANIAGUA did knowingly and intentionally

41

distribute 5 kilograms and more, to wit, approximately 2,513 kilograms (approximately 5,528 pounds) of cocaine, a Schedule II Controlled Substance, intending and knowing that the cocaine would be unlawfully imported into the United States; in violation of Title 21, United States Code, Sections 959, 960, and 963, and Title 18, United States Code, Section 2.

## Count 47

### DISTRIBUTION OF COCAINE OUTSIDE THE UNITED STATES

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. On or about January 20, 2011, in Guayaquil, Ecuador, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", did knowingly and intentionally distribute 5 kilograms and more, to wit, approximately 500 kilograms (approximately 1,100 pounds) of cocaine, a Schedule II Controlled Substance, intending and knowing that the cocaine would be unlawfully imported into the United States; in violation of Title 21 United States Code, Sections 959, 960, and 963, and Title 18, United States Code, Section 2.

## Count 48

### DISTRIBUTION OF COCAINE OUTSIDE THE UNITED STATES

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. On or about January 21, 2011, in Guayaquil, Ecuador, defendant VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", did knowingly and intentionally distribute 5 kilograms and more, to wit, approximately 340 kilograms (approximately 748 pounds) of cocaine, a Schedule II Controlled

42

Substance, intending and knowing that the cocaine would be unlawfully imported into the United States; in violation of Title 21 United States Code, Sections 959, 960, and 963, and Title 18, United States Code, Section 2.

**Count 49**

**DISTRIBUTION OF COCAINE OUTSIDE THE UNITED STATES**

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. On or about March 13, 2011, in Guayaquil, Ecuador, defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", did knowingly and intentionally distribute 5 kilograms and more, to wit, approximately 340 kilograms (approximately 748 pounds) of cocaine, a Schedule II Controlled Substance, intending and knowing that the cocaine would be unlawfully imported into the United States; in violation of Title 21 United States Code, Sections 959, 960, and 963, and Title 18, United States Code, Section 2.

**Count 50**

**DISTRIBUTION OF COCAINE OUTSIDE THE UNITED STATES**

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. On or about March 17, 2011, in Guayaquil, Ecuador, defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", and JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", did knowingly and intentionally distribute 5 kilograms and more, to wit, approximately 430 kilograms (approximately 946 pounds) of cocaine, a Schedule II Controlled

Substance, intending and knowing that the cocaine would be unlawfully imported into the United States; in violation of Title 21, United States Code, Sections 959, 960, and 963, and Title 18, United States Code, Section 2.

**Count 51**

**CONSPIRACY TO IMPORT COCAINE INTO THE UNITED STATES**

1. The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2. Beginning on a date unknown to the grand jury and continuing up to and including March 18, 2011, within the Southern District of California, and elsewhere, defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", RODRIGO COLMENARES Y SANCHEZ-SOTO, GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", OSCAR DOMINGUEZ VILLA-DIAZ, JOSE BENJAMIN VALDEZ-BERNAL, RIGOBERTO DIAS-PANIAGUA, EFRAIN DIAS-PANIAGUA, and LUIS HORACIO RAMIREZ DE ARELLANO-MORALES did knowingly and intentionally conspire together and with each other, and with other persons known and unknown to the grand jury, to import 5 kilograms and more, to wit: approximately 4,123 kilograms (approximately 9,070 pounds) of cocaine, a Schedule II Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952 and 960.

**OVERT ACTS**

The overt acts set forth in Count 2 above are incorporated as if set forth in full herein. All in violation of Title 21, United States Code Section 963.

44

# **FORFEITURE ALLEGATIONS**

1.   The introductory allegations and the manner and means set forth above are incorporated as if set forth in full herein.

2.   The allegations contained in the above Counts are re-alleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 21, United States Code, Section 853, and Title 18, United States Code, Section 982(a)(1).

3.   As a result of the commission of the felony offenses alleged in Counts 1 and 45 through 51 of this Indictment under Title 21, United States Code, said violations being punishable by imprisonment for more than one year, and pursuant to Title 21, United States Code, Section 853(a)(1), defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", RODRIGO COLMENARES Y SANCHEZ-SOTO, GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", OSCAR DOMINGUEZ VILLA-DIAZ, JOSE BENJAMIN VALDEZ-BERNAL, RIGOBERTO DIAS-PANIAGUA, EFRAIN DIAS-PANIAGUA, and LUIS HORACIO RAMIREZ DE ARELLANO-MORALES, shall, upon conviction, forfeit to the United States all their rights, title and interest in any and all property constituting, or derived from, any proceeds the defendants obtained directly or indirectly as a result of the offenses.

//
//
//
//

45

4. As a result of the commission of the felony offenses alleged in Counts 1 and 45 through 51 of this Indictment said violations being punishable by imprisonment for more than one year and pursuant to Title 21, United States Code Section 853(a)(2), defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", RODRIGO COLMENARES Y SANCHEZ-SOTO, GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", OSCAR DOMINGUEZ VILLA-DIAZ, JOSE BENJAMIN VALDEZ-BERNAL, RIGOBERTO DIAS-PANIAGUA, EFRAIN DIAS-PANIAGUA, and LUIS HORACIO RAMIREZ DE ARELLANO-MORALES shall, upon conviction, forfeit to the United States all their rights, title and interest in any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the Title 21 violations alleged in this Indictment.

5. Pursuant to Title 18, United States Code, Section 982(a)(1), as a result of the commission of the felony offenses alleged in Counts 2 thru 44 of this Indictment (Section 1956 and 1957 counts), said violations being punishable by imprisonment for more than one year upon conviction, defendants VICTOR MANUEL FELIX-FELIX, aka "Raul Castro Rodriguez", aka "El Senor", aka "063", LUIS ROBERTO GARCIA-FIERRO, aka "Arquitecto", JORGE GUILLERMO GONZALEZ-CARDENAS, aka "Ingeniero", RODRIGO COLMENARES Y SANCHEZ-SOTO, GABRIELA VAZQUEZ-VILLAVICENCIO, aka "Karla", aka "Gaby", aka "Monina", JESUS RODOLFO GUAJARDO-FARIAS, aka "Doctor", OSCAR DOMINGUEZ VILLA-DIAZ, JOSE BENJAMIN VALDEZ-BERNAL, RIGOBERTO DIAS-PANIAGUA, EFRAIN DIAS-PANIAGUA, LUIS HORACIO RAMIREZ DE ARELLANO-MORALES, MARIA RAQUEL BENITEZ, ADALBERTO URBINA-GOMEZ, CARLOS CAMET-RIVADENEYRA, aka "Guero", ARIEL

JULIAN SAVEIN, JOSE NIEVES MONTENEGRO-FELIX, aka "Charlie", ALEXIS FERNANDO VELAZCO-HERRERA, aka "Fercho", JUAN J. PIMENTEL, MARTIN MORALES-SOTO, JUAN CARLOS ALZATE, aka "Guero", JEFFREY JAMES BROWN, LINDA BROWN, aka "Sarah", NORMAN GILDARDO CUENCA-HURTADO, DARREN P. COMANS, aka "Darren Commons", PATRICIA LOPEZ, aka "Susana", JOSE NICEFORO GONZALEZ-RIVERA, aka "Raul", JOSE AUGUSTO GONZALEZ-ROMAN, RONALD BLOCH, and OSCAR LNU shall, upon conviction, forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

a. $13,770,858.00 in United States currency, representing the value, in United States currency, of the money laundered as a result of the money laundering counts alleged in Counts 2 thru 44.

b. $76,275,500.00 in United States Currency, representing the amount of proceeds obtained as a result of the drug trafficking offenses alleged in Counts 1 and 45 through 51.

6. If any of the above-described forfeitable property, as a result of any act or omission of the defendants

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

//

//

47

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the defendants up to the value of the said property listed above as being subject to forfeiture.

All in violation of Title 21, United States Code, Section 853, and Title 18, United States Code, Section 982.

DATED: May 13, 2011.

A TRUE BILL:

Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
     JOHN R. KRAEMER
     Assistant U.S. Attorney

48